# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT COLDIRON,
Plaintiff,

vs.

CLOSSMAN CATERING, LLC,
Defendant.

Case No. 1:14-cv-300
Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

## I. Background

Plaintiff Robert Coldiron was a driver for defendant Clossman Catering, LLC, a business that delivers meals to senior citizens. After plaintiff experienced pain in his groin while at work, an ambulance transported him to the emergency room where he was diagnosed with a hernia. Plaintiff eventually scheduled surgery to repair the hernia and gave defendant approximately one week's notice that he would need more than four weeks' leave to recover from surgery. Defendant ultimately terminated plaintiff based on plaintiff's alleged failure to provide defendant with six weeks' notice of elective surgery as required under defendant's attendance policy. Plaintiff claims his termination violated the anti-discrimination laws and brought suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act of 1990 ("ADA") and ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and related state laws.[1] This matter is before the Court on defendant's motion for summary judgment (Doc. 22), plaintiff's response (Doc. 28), and defendant's amended reply (Doc. 38). This matter is also before the Court on plaintiff's objection to portions of Elizabeth Forman's affidavit filed in support of Clossman Catering's motion for summary judgment (Doc. 25) and defendant's response in opposition (Doc. 32); defendant's objection to and motion to strike

---

[1] Plaintiff's complaint also raises a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; however, plaintiff has since voluntarily dismissed that claim without prejudice. (Doc. 10).

portions of the affidavit of Robert Coldiron and exhibits filed in response to defendant's motion for summary judgment (Doc. 33); and plaintiff's supplemental memorandum objecting to the supplemental affidavit of Elizabeth Forman filed in support of defendant's motion for summary judgment and request that paragraphs 3 and 6, and Exhibit 1 of the supplemental affidavit be stricken (Doc. 37)[2] and defendant's response thereto (Doc. 39).[3] The Court will first address the motions to strike.

## II. Motions to Strike

### A. Plaintiff's Motions to Strike Portions of Elizabeth Forman's Affidavit, Supplemental Affidavit, and Accompanying Exhibits (Docs. 25 & 37)

Plaintiff moves to strike four paragraphs and an accompanying exhibit from the affidavit of Elizabeth Forman[4] that defendant submitted with its motion for summary judgment. (Doc. 25). Additionally, plaintiff moves to strike two paragraphs and an accompanying exhibit from the supplemental affidavit of Forman that defendant submitted with its response to plaintiff's initial motion to strike. (Doc. 37).

#### 1. Paragraph 3(f) of Forman's affidavit, paragraph 6 of Forman's supplemental affidavit, and Lorthioir's incident report

In her affidavit, Forman attests, "3(f). Through communication with Mr. Coldiron's doctor Clossman's learned that [his] surgery was elective." (Affidavit of Elizabeth Forman, Doc. 22-1, Exh. A at ¶ 3(f)). In her supplemental affidavit, Forman avers:

> 6. As indicated in my original affidavit, Clossman Catering, LLC learned that Robert Coldiron's surgery was elective. This statement is based upon an Incident Report dated August 5, 2013, authored by Brook Lorthioir, Human Resources Director (now deceased), which was made in the course of a regularly conducted

---

[2] The Court granted plaintiff leave to file a surreply on September 16, 2015. (Doc. 35). Plaintiff subsequently filed his supplemental memorandum, which the Court will consider as a motion to strike. (Doc. 37).

[3] The legal and factual issues involved in this case are not complex, and they have been fully briefed by the parties. Pursuant to S.D. Ohio Civ. R. 7.1, the Court therefore finds that oral argument is not "essential to the fair resolution" of this case, and plaintiff's request for oral argument is denied.

[4] Elizabeth Forman and David Closky are the two members of Clossman Catering, a limited liability company. (Affidavit of Elizabeth Forman, Doc. 22-1, Exh. A, at ¶ 1).

business activity and kept in the regular course of business. It was [a] regular practice for Clossman Catering, LLC to prepare such reports and Ms. Lorthioir, who had direct communication related to the content of the Incident Report, created and signed the document. I have personal knowledge of the Incident Report and am familiar with the recordkeeping practices of Clossman Catering, LLC as the custodian of records. This Incident Report is attached hereto as Exhibit 1.

(*See* Supplemental Affidavit of Elizabeth Forman in Support of Summary Judgment, Doc. 38-1, Exh. A at ¶ 6).[5] Attached to the supplemental affidavit is a copy of an incident report dated August 5, 2013 and signed by Brook Lorthioir, compliance officer. (Incident Report, Doc. 32-1, Exh. 1). Lorthioir indicated in the report that on August 5, 2013, she called the office of plaintiff's surgeon to determine whether Dr. Kabithe "would be able to classify Mr. Coldiron's surgery as 'non-elective.'" Lorthioir further stated, "His nurse Sharon said she would ask the doctor if this was possible. She later called me back and said the doctor said this surgery was not an emergency and he could not classify it as 'non-elective.'" (*Id.*).

Plaintiff contends that paragraph 3(f) of Forman's affidavit should be stricken because it is hearsay and is not based on Forman's personal knowledge. (Doc. 25 at 2). Plaintiff argues that the affidavit does not offer a foundation from which the Court could find that Forman had personal knowledge concerning the nature of plaintiff's surgery, and it does not "suggest that she or any identified representative from Clossman spoke to [plaintiff's doctor], or his office." (*Id.*). As to the incident report, plaintiff contends that it is not a business record because "[i]t did not concern, nor was it submitted in the course of a regularly conducted activity of Clossman's." (Doc. 37 at 3). Plaintiff argues that instead "the document was prepared in connection with a dispute regarding the status of Coldiron's surgery." (*Id.*). Further, plaintiff contends that even if

---

[5] Defendant attached a copy of this supplemental affidavit both to its response to plaintiff's motion to strike (Doc. 32-1, Exh. A) and its reply in support of its motion for summary judgment (Doc. 31-1, Exh. A). Because the copies of the supplemental affidavits attached to those documents were missing a page, defendant filed an amended reply in support of its motion for summary judgment. (Doc. 38). The copy of the supplemental affidavit attached to the amended reply includes the page missing from the earlier filings. (Doc. 38-1, Exh. A). Thus, the Court will refer to this version of the supplemental affidavit.

the incident report qualifies as a business record, the additional layers of hearsay within it are not admissible. (*Id.* at 4). Specifically, plaintiff asserts that the incident report reflects information that Dr. Kabithe purportedly relayed to his nurse, who then relayed that information to Lorthioir. Plaintiff contends that the alleged statements of Dr. Kabithe and his nurse are not admissible under Rule 803(6) because they were outsiders who had no business duty to report the information to defendant. (*Id.*). Plaintiff argues that paragraph 6 of Forman's supplemental affidavit should also be stricken because its only basis is the inadmissible incident report. (*Id.* at 5). Plaintiff contends that Forman had no personal knowledge concerning the nature of his surgery and that the incident report is unreliable because plaintiff was unable to question Lorthioir about it due to her death. (*Id.*).

Defendant responds that paragraph 3(f) is not hearsay because it is not being offered to prove whether plaintiff's surgery was elective, but to show the effect of believing it was on defendant's decision to terminate him. (Doc. 32 at 2-4). Further, defendant argues that even if the statement is hearsay, it falls within the business records exception in Federal Rule of Evidence 803(6) because it is based on an incident report made and kept in the regular course of business. (*Id.* at 4-5). As to paragraph 6 of the supplemental affidavit and the incident report, defendant argues that they are not hearsay because they are not being offered to prove that plaintiff's surgery was elective, but to show that those statements were made and their effect on Forman. (Doc. 39 at 5-7). Even if the incident report is hearsay, defendant contends that it is admissible as a business record. (*Id.* at 7-13).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. A court cannot rely on unsworn inadmissible hearsay when ruling on a motion for summary judgment. *Hoover v. Walsh*, 682 F.3d 481, 491 n.34 (6th Cir. 2012). "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009).

Under Rule 803(6), business records will not be excluded by the rule against hearsay if they satisfy the following requirements:

> (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009).

> "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record." The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, "[t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation."

*United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (alteration in original) (citations omitted). "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. *See also*

5

*Bondie v. Bic Corp.*, 947 F.2d 1531, 1534 (6th Cir. 1991) (holding that a report containing a party's statements was admissible because of "the combined effect of" two separate exceptions).

Here, as to paragraph 3(f) of Forman's affidavit and paragraph 6 of her supplemental affidavit, these statements are inadmissible hearsay to the extent they are being offered to prove that plaintiff's surgery was truly elective. *See* Fed. R. Evid. 801(c) (providing that an out-of-court statement is hearsay if it is offered "to prove the truth of the matter asserted in the statement"). The Court finds that the business records exception in Rule 803(6) does not render the incident report admissible to prove that plaintiff's surgery was truly elective. While Rule 803(6) might render the incident report itself admissible, it would not make the hearsay statements within the report of Dr. Kabithe to his nurse and of his nurse to Lorthioir admissible. Defendant has not identified any exception to the hearsay rules that would make the "hearsay within hearsay" of Dr. Kabithe and his nurse admissible for the purpose of proving that plaintiff's surgery was elective. *See* Fed. R. Evid. 805; *Bondie*, 947 F.2d at 1534. Thus, the Court will not consider the incident report, paragraph 3(f) of Forman's affidavit, or paragraph 6 of her supplemental affidavit as evidence that plaintiff's surgery was elective. *See Hoover*, 682 F.3d at 491 n.34.

Nevertheless, the Court finds that it may consider the incident report to the extent that defendant is offering it not "to prove the truth of the matter asserted but to show its effect on" Forman in her decision to terminate plaintiff. *See Biegas*, 573 F.3d at 379. In this case, the incident report is not being offered as proof that plaintiff's surgery was in fact elective, but as evidence of Foreman's good faith belief that plaintiff's extended absence from work did not comply with company policy and that plaintiff was terminated for a legitimate, non-discriminatory reason. *Biegas*, 573 F.3d at 379. *See also Rhoades v. Standard Parking Corp.*, 559 F. App'x 500, 506 (6th Cir. 2014) (customer's statement to parking company that he wanted

6

employee gone immediately was not offered for its truth, but to show that managers involved in employee termination decision were under the impression that customer demanded employee's discharge); *McCrimon v. Inner City Nursing Home, Inc.,* No. 1:10-cv-392, 2011 WL 4632865, at *9 (N.D. Ohio Sept. 30, 2011) (letter from nursing home patient's family alleging plaintiff abused patients in advance of her termination was not hearsay because letter was "offered, not as proof that Plaintiff abused a resident, but instead as evidence of [the employer's] good faith belief that Plaintiff had mistreated a resident and that Plaintiff was terminated for a legitimate, non-discriminatory reason"); *Parikh v. Cleveland Hardware & Forging Co.,* No. 1:04-cv-2363, 2006 WL 1515667, at *10 (N.D. Ohio May 26, 2006) (statement that employee was resigning due to inability to work with plaintiff was not hearsay because it merely demonstrated that employer received and relied on such information, and statement was relevant to whether employer held honest belief that plaintiff's behavior was a cause for high turnover rate).

Accordingly, plaintiff's motions to strike are granted to the extent that the incident report, paragraph 3(f) of Forman's affidavit, and paragraph 6 of her supplemental affidavit are being offered as proof that plaintiff's surgery was elective, but are denied to the extent that these pieces of evidence are being offered to show that Forman believed the surgery was elective.

2. Paragraph 5 of Forman's affidavit, paragraph 3 of Forman's supplemental affidavit, and the summary of the check registry

One issue in this case is whether defendant employed 50 or more employees to qualify as a covered employer for purposes of the FMLA. In support of its claim that it is not a covered employer, defendant presents the affidavit of Forman. In her affidavit, Forman attests:

5. Attached hereto as Exhibit 1 are ThinkPay records which demonstrate the number of checks issued by Clossman for each of the weeks in 2012 and 2013. Where a portion of the checks in any given week were non-payroll, I have noted the number of payroll checks issued. I have also noted instances where an employee ceased working the prior week, but was issued a payroll check the

following week. All checks issued by Clossman for any reason are recorded by ThinkPay.

(Doc. 22-1, Exh. A at ¶ 5). Attached to Forman's affidavit is a table entitled "Summary of

Check Registry for Clossman Catering for 2012 and 2013." (Summary of Check Registry for

Clossman Catering for 2012 and 2013, Doc. 22-1, Exh. 1). This table is composed of three

columns. The first two columns are labeled "Check Date" and "Number of Checks," and they

indicate the number of checks that defendant issued during each week in 2012 and 2013. The

third column is labeled "Comments" and contains information designed to clarify that the

number of employees during some weeks was less than the number of checks issued.

Additionally, some entries within the column labeled "Number of Checks" contain parenthetical

information that the number of payroll checks issued was less than the total number of checks

issued in certain weeks. (*See id.*). In her supplemental affidavit, Forman avers:

> 3. As indicated in my original affidavit, attached as Exhibit 1 to that Affidavit is a ThinkPay summary of the number of checks issued by Clossman for each of the weeks in 2012 and 2013. I have personal knowledge that the number of checks issued as indicated on that summary is true and accurate. I have personal knowledge that the statements I placed on the ThinkPay summary are true and accurate. The summary is based on ThinkPay LLC Check Registers which are voluminous. I am the custodian of records for Clossman Catering, LLC. I am familiar with the record keeping practices of Clossman Catering, LLC. The ThinkPay summary is based on business records that I have personal knowledge of as the owner of the company. The records are kept in the regular course of business of Clossman Catering, LLC. The records are the result of a regular practice of the business to create the records. The records were created from information transmitted by a person with knowledge of the information contained on the records.

(Doc. 38-1, Exh. A at ¶ 3).

Plaintiff argues that the Court should strike paragraph 5 of Forman's affidavit because its

only basis is the summary of the check registry, which is not admissible. (Doc. 25 at 3).

Plaintiff contends that the summary of the check registry is inadmissible because it is not a

business record as "it was prepared during litigation in an attempt to prove the truth of the matter

asserted. Moreover Forman admits to editing the exhibit." (*Id.*). Further, plaintiff contends that defendant has not properly authenticated the document, and it is not the best evidence of defendant's payroll records because "[at] best it is a representation of the original." (*Id.* at 3-4 & n.2). Plaintiff argues that the Court should strike paragraph 3 of the supplemental affidavit because Forman's statement about her personal knowledge concerning the number of checks issued is "self-serving, and presents no basis for the assertion." (Doc. 37 at 5). Plaintiff contends that even if the statement is true "it does not rebut other evidence that the number of Clossman employees exceeded 50." (*Id.*).

Defendant responds that paragraph 5 of Forman's affidavit and the summary of the check registry are admissible under Federal Rule of Evidence 1006 because the exhibit is a summary of check registers that are admissible as business records under Rule 803(6). (Doc. 32 at 5-6). Defendant argues that even if paragraph 3 of the supplemental affidavit is "self-serving" that does not provide a legal basis for striking it. (Doc. 39 at 3-4). Further, defendant asserts that the statement in paragraph 3 is relevant and based on Forman's personal knowledge. (*Id.* at 4-5).

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. "In order to lay a proper foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation." *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998).

Here, the Court finds that the summary of the check registry is admissible as a summary of the actual check records in defendant's possession, *see* Fed. R. Evid. 1006, and that the actual check records are admissible under the hearsay exception for business records. *See* Fed. R. Evid.

803(6); *Cobbins*, 566 F.3d at 588; *Jenkins*, 345 F.3d at 935. First, as to plaintiff's argument that Forman's statement in paragraph 3 of her supplemental affidavit—that she has personal knowledge of the number of checks issued by defendant and of the accuracy of the summary of the check registry—is self-serving, the Court finds that this is not a sufficient reason to exclude the evidence. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it."); *see also Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir. 2008) ("[Plaintiff's] affidavit, albeit arguably self-serving, is not 'no evidence.'"). Moreover, to the extent that plaintiff is arguing that defendant has not laid a foundation for the check summary, Forman has laid such a foundation in paragraph 3 of her supplemental affidavit where she indicates that she is the custodian of the records on which the summary was based and that she has personal knowledge that the information contained in the summary is true and accurate. Plaintiff has not submitted any testimony or documentary evidence to contradict these affidavit statements, and there is nothing to indicate that Forman is not competent to testify as to these matters. *See* Fed. R. Civ. P. 56(c)(4). Thus, defendant has laid a proper foundation for the summary. *See Bray*, 139 F.3d at 1110. Accordingly, plaintiff's motions to strike are denied as to paragraph 5 of Forman's affidavit, the summary of the check registry, and paragraph 3 of her supplemental affidavit.

3. Paragraphs 3(j) and 6 of Forman's affidavit

In her affidavit, Forman attests,

> 3(j). [After his termination], [p]laintiff's driving route was immediately taken over by an existing employee, J.P., whose date of birth is November 2, 1951.

> 6. Clossman had no unpaid employees or independent contractors that would not have been issued a check via ThinkPay in 2012 or 2013, with the potential exception of one employee that took unpaid leave from 6/18/13 to 6/30/13.

(Doc.22-1, Exh. A, at ¶¶ 3(j), 6). Attached to defendant's response to the motion to strike is an affidavit of James Pope in which Pope states that his date of birth is November 2, 1951, and he "took over Clossman's delivery route formerly driven by Robert Coldiron when he separated from employment." (Affidavit of James Pope, Doc. 32-2, Exh. B, at ¶¶ 2-3).

Plaintiff argues that the Court should strike paragraphs 3(j) and 6 because they are self-serving and the confusion they create outweighs their probative value. (Doc. 25 at 4). Plaintiff asserts that defendant has failed to "set forth the nature of the document(s) upon which [Forman] relied to make [these] statement[s]." (*Id.*).

Defendant responds that the Court should not strike the statements because they are based on Forman's personal knowledge, they are admissible in evidence, and Forman is competent to testify about them. (Doc. 32 at 7-8).

Here, the Court again notes that the alleged self-serving nature of the statements in paragraphs 3(j) and 6 is not a sufficient reason to exclude the evidence. *See Harris*, 627 F.3d at 239; *Niemi*, 543 F.3d at 300. Moreover, defendant has resolved any confusion as to J.P.'s identity by submitting James Pope's affidavit. (Doc. 32-2, Exh. B).

As to paragraph 6, the statement that "Clossman had no unpaid employees or independent contractors that would not have been issued a check via ThinkPay in 2012 or 2013" will not be stricken. Forman has sworn that the statement is based on her personal knowledge and the statement is otherwise admissible. Plaintiff has not submitted any testimony or documentary evidence that suggests Forman, as an owner of defendant and custodian of defendant's records, would not have personal knowledge of the company's payroll system and how defendant's employees were paid, and there is nothing to indicate that Forman is not competent to testify as to these matters. *See* Fed. R. Civ. P. 56(c)(4). However, the statement in paragraph 6 regarding "*the potential exception* of one employee that took unpaid leave from 6/18/13 to 6/30/13" shall

be stricken as speculative and inadmissible because the statement lacks any foundation to assess the factual basis for and trustworthiness of the statement regarding a "potential" exception. Accordingly, plaintiff's motion to strike is denied as to paragraph 3(j) of Foman's affidavit, and denied in part and granted in part as to paragraph 6 of Forman's affidavit.

B. <u>Defendant's Motion to Strike Portions of Robert Coldiron's Affidavit and Exhibits to Plaintiff's Response to the Motion for Summary Judgment (Doc. 33)</u>

In its motion to strike, defendant argues that the Court should strike five paragraphs from the affidavit that plaintiff has attached to his response to the motion for summary judgment because those paragraphs directly contradict his earlier deposition testimony. (Doc. 33 at 3-9). Defendant also contends that the Court should not consider the exhibits attached to plaintiff's response to the motion for summary judgment because plaintiff "makes no attempt to authenticate" them. (*Id.* at 9). Moreover, defendant asserts that the exhibits are inadmissible hearsay because plaintiff is submitting them as evidence of the truth of their content. (*Id.*). Plaintiff has not filed a response to defendant's motion. The Court will address each of the disputed affidavit paragraphs separately and then turn to plaintiff's exhibits.

1. <u>Paragraph 6</u>

In his affidavit, plaintiff attests the following: "6. I was fully qualified for the job and was never disciplined prior to my discharge." (Affidavit of Robert Coldiron in Support of Opposition to Defendant's Motion for Summary Judgment ("Coldiron Affidavit"), Doc. 28-2 at ¶ 6). In contrast, plaintiff provided the following testimony at his deposition:

> Q. So you acknowledge that you had been issued points in the past for violation of [the attendance] policy?
> A. I just did not remember these.
> Q. That's okay. But you acknowledge that now?
> A. Yeah. You're going back an awful long time now. Back in '08.
> Q. Well, 2012 is not that long ago.
> A. Probably off sick or something. I don't know.

(Deposition of Robert Coldiron, Doc. 22-2 at 19).[6]

"[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* Relevant factors in determining whether the affidavit attempts to create a "sham fact issue" include "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.* at 909.

Here, the phrase "and was never disciplined prior to my discharge" will be stricken from paragraph 6 of plaintiff's affidavit because it clearly contradicts his earlier deposition testimony that he had been issued points in the past for violating defendant's attendance policy. (*Cf.* Coldiron Affidavit, Doc. 28-2 at ¶ 6 *with* Doc. 22-2 at 19); *Aerel, S.R.L.*, 448 F.3d at 908. However, the phrase "I was fully qualified for the job" does not contradict earlier deposition testimony and will not be stricken.

2.  Paragraph 44

Plaintiff further attests, "44.  On July 24, 2013 I visited Dr. Kabithe who confirmed the [hernia] diagnosis and recommended immediate surgery. . . ." (Coldiron Affidavit, Doc. 28-2 at ¶ 44).  In contrast, plaintiff provided the following testimony at his deposition:

---

[6] Citations to this document refer to the internal page numbers, not those provided by CM/ECF.

Q. All right. Do you agree that Dr. Kabithe's records do not indicate that this was emergency surgery?
A. They wouldn't sign for it, that's correct. I don't know of a doctor who would.
Q. So it was your decision to have it—
A. That's correct.
Q. —on that date?
A. That's correct. It was my body. I was the one hurting. Not him.
Q. But he didn't tell you you had to have it on that date?
A. It was either that or die. No, he did not.
Q. Okay.
A. It's like a toothache, you either get the tooth pulled or you suffer with the pain. I didn't like the pain.

(Doc. 22-2 at 32).

Q. And did [Lorthioir][7] tell you . . . that you would need paperwork—
A. That is correct.
Q. —that would show that it was non-elective?
A. She told me to take the paper to the doctor's office and have him sign the paper that it was elective or non-elective. The doctor's office refused to sign that saying that they can't sign if any surgery is elective or non-elective. That's what they told me.

(*Id.* at 34).

Here, the Court is not convinced that plaintiff's statement that Dr. Kabithe "recommended immediate surgery" directly contradicts plaintiff's deposition testimony. (*See* Coldiron Affidavit, Doc. 28-2 at ¶ 44). At his deposition, plaintiff testified that Dr. Kabithe's records did not indicate that plaintiff's surgery was emergency surgery and did not tell plaintiff that he "had to have [surgery] on that date[.]" (Doc. 22-2 at 32). This testimony is not "directly contradictory" to plaintiff's affidavit because Dr. Kabithe may have "recommended immediate surgery" in his consultation with plaintiff even if his records do not indicate that the surgery was an emergency, and Dr. Kabithe may have "recommended immediate surgery" even if he did not order that plaintiff "had to have" surgery on a specific date. Thus, paragraph 44 will not be stricken as directly contradictory to plaintiff's earlier deposition testimony. *See Aerel, S.R.L.,*

---

[7] Lorthioir worked as the compliance officer for defendant at the time of plaintiff's termination. (*See* Deposition of Elizabeth Forman, Doc. 27 at 51).

448 F.3d at 908. However, the Court nevertheless strikes the statement that Dr. Kabithe "recommended immediate surgery" as inadmissible hearsay. The statement does not fall under the exception in Fed. R. Evid. 803(4) as a statement for the purpose of medical diagnosis or treatment because that exception "applies only to statements made by the one actually seeking or receiving medical treatment" and not to statements allegedly made by a doctor to his patient. *Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). Plaintiff has failed to suggest any other exception to the hearsay bar.

### 3. Paragraph 51

Plaintiff further avers:

> 51. I attempted to work some days between July 23, 2013 and August 1, 2013 but I explained to Lo[r]thioir that I was in excruciating pain, that I was unable to lift the boxes which held the individual meals for delivery, that my bending was restricted and that driving was difficult.

(Coldiron Affidavit, Doc. 28-2 at ¶ 51). In contrast, plaintiff provided the following testimony at his deposition:

> Q. . . . [T]he day that you were transported by ambulance, you spoke with [Elizabeth Forman]?
> A. Yes.
> . . .
> Q. Okay. But she allowed you to have time off to have this emergency situation dealt with, correct?
> A. I was off for like two days.
> Q. Right.
> A. Yes.
> Q. And then you ended up returning to work?
> A. That is correct.
> Q. Okay. And you were able to return to your full job duties, correct?
> A. Not really full, no. Not the way I was before I had the hernia attack, no.
> Q. What do you mean, you did—
> A. I was under a doctor's stipulation don't lift anything more than 6 pounds or try to limit stretching, bending and like so as it wouldn't hurt it any worse than what it was until I could—
> Q. What doctor gave you those restrictions?
> A. Dr. Matthews. Dr. Kabithe.
> Q. You never gave those records to Clossman, did you?

A. They have those records, yes, ma'am. From the day that I was transported to the hospital until the day I came back, and there's all doctors in there telling me what to do.

Q. When you came back to work at Clossman after this 7/18 transportation to the emergency room—

A. Yes.

Q. —you didn't bring any medical paperwork indicating that you had a restriction?

A. Yes. I gave it to [Lorthioir].

Q. Okay. And you're saying that that restriction was that you couldn't lift more than 6 pounds?

A. Yes. Which was fine because most of our duties wasn't more than 6 pounds.

Q. So you were able to perform your duties and run your route correct?

A. Yes.

. . .

Q. Okay. Did you have any issues performing your route that you communicated to Clossman after you returned to work?

A. No, not really, no, ma'am. No.

(Doc. 22-2 at 25-28).

Here, while the affidavit testimony arguably contradicts plaintiff's deposition testimony that he did not "have any issues performing [his] route that [he] communicated to [defendant] after [he] returned to work," he also testified in his deposition that he provided Lorthioir with paperwork indicating that he "was under a doctor's stipulation [not to] lift anything more than 6 pounds [and] try to limit stretching, bending and [the] like so as it wouldn't hurt it any worse than what it was." (*See* Coldiron Affidavit, Doc. 28-2 at ¶ 51; Doc. 22-2 at 26-28). Thus, plaintiff did provide sufficient deposition testimony that does not contradict his affidavit, and paragraph 51 will not be stricken. *See Aerel, S.R.L.*, 448 F.3d at 908.

4. Paragraphs 61 and 66

Plaintiff further attests:

61. I never received notice either by phone, email, [or] letter that I was accumulating points, or that I had been terminated.

66. Neither Forman [n]or [co-owner David] Closky ever spoke with me regarding any obligation to comply with Clossman's Attendance Policy in light of my hernia surgery.

(Coldiron Affidavit, Doc. 28-2 at ¶¶ 61, 66). In contrast, plaintiff provided the following testimony at his deposition:

> Q. All right. Do you agree that [Lorthioir] communicated to you that this, they had discovered this was non-elective and they needed you to comply with the six weeks notice attendance policy?
> A. She told me to have that paper signed by the doctor so that I would be in that compliance. I could not get the paper signed so, therefore, as far as I knew, I was out of compliance and I really at that particular time didn't care because I was hurting and I was going to get it taken care of.
> Q. So you knew you were out of compliance, right?
> A. I didn't know there was a compliance to have a surgery. I knew there was compliance for vacation but not to have, to go into the hospital and have surgery.
> Q. But [Lorthioir] told you that you were going to accumulate points—
> A. At that time. That day.
> Q. Okay. Let me finish my question. You agree that [Lorthioir] told you [that you] were going to accumulate points for this absence?
> A. She told me that day, yes.

(Doc. 22-2 at 35-36).

Here, the Court first notes that these paragraphs do not directly contradict plaintiff's deposition testimony. Specifically, as to paragraph 61, plaintiff's statement that he "never received notice either by phone, email, [or] letter that [he] was accumulating points, or that [he] had been terminated" does not directly contradict his deposition testimony that Lorthioir told him *in person* that he would accumulate points. (*Cf.* Coldiron Affidavit, Doc. 28-2 at ¶ 61 *with* Doc. 22-2 at 35-36). Moreover, plaintiff's statement in paragraph 66 that neither Forman nor Closky spoke with him concerning his obligation to comply with the attendance policy does not directly contradict his deposition testimony that *Lorthioir* was the one who informed him of that obligation. (*Cf.* Coldiron Affidavit, Doc. 28-2 at ¶ 66 *with* Doc. 22-2 at 35-36). Therefore,

plaintiff's affidavit statements do not "directly contradict" his earlier deposition testimony and paragraphs 61 and 66 will not be stricken.[8] *See Aerel, S.R.L.*, 448 F.3d at 908.

### 5. Plaintiff's Exhibits

Finally, plaintiff has attached numerous exhibits to his response, including medical records, Clossman attendance policies and leave request forms, and Clossman employee rosters. (*See* Summary of 7/24/13 Visit with Dr. Kabithe for Robert L. Coldiron, Doc. 28-1, Exh. 1; Disability Certificate for Robert Coldiron Signed by Dr. Kabithe on July 31, 2013 and Undated Pre-Operation Letter from Roosevelt Surgical Associates, Doc. 28-1, Exh. 2; Notice of Clossman Catering Attendance Policy Signed by Robert Coldiron on July 22, 2010, Doc. 28-1, Exh. 3; Undated Clossman Catering's Unpaid Time Off Policy, Doc. 28-1, Exh. 4; Blank Copy of Clossman Catering Form for Advance Notice of Upcoming Time Off, Doc. 28-1, Exh. 5; Copy of Form for Advance Notice of Upcoming Time Off Signed by Robert Coldiron on January 23, 2013, Vacation Request and Approval Form for Robert Coldiron Dated January 23, 2013, and Absence Request Form Dated January 24, 2011, Doc. 28-1, Exh. 6; List of Clossman Catering Employees at 20 Weeks Prior to 8/25/2013, Doc. 28-1, Exh. 7; and Clossman Catering Employee Roster 8/25/2011 to 8/25/2013, Doc. 28-1, Exh. 8).

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Supreme Court has held that in requiring the nonmoving party to produce evidence to withstand a motion for summary judgment, "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). "To satisfy the requirement of authenticating or identifying an item of evidence, the

---

[8] The Court notes that whether or not Forman or Closky personally gave plaintiff notice of his obligations under the attendance policy, it is undisputed that defendant had given him notice through Lorthior of his obligations to comply with the attendance policy and that he would accumulate points during his absence. (*See* Doc. 22-2 at 35-36).

proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One way to authenticate an item of evidence is to provide testimony from a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Another way to authenticate an item of evidence is to rely on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

If a document is produced by an opposing party during discovery, "'there [is] sufficient circumstantial evidence to support its authenticity' at trial." *Churches of Christ in Christian Union v. Evangelical Benefit Tr.*, No. 2:07-cv-1186, 2009 WL 2146095, at *5 (S.D. Ohio Jul. 15, 2009) (alteration in original) (citing *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991)). "[I]t is disingenuous for [defendant] to object to copies of documents that it produced to [p]laintiff[] pursuant to discovery requests." *Id.* (citing *U.S. v. Cinergy Corp.*, 495 F. Supp.2d 909, 914 (S.D. Ind. 2007)). On summary judgment, a court may consider exhibits that a party has authenticated in a deposition. *See Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 728-29 (6th Cir. 2007); *Knight v. Shulman*, 102 F. Supp.2d 867, 871 (S.D. Ohio 1999).

Here, defendant's authentication argument is not well-taken. First, as to the medical records in exhibits 1 and 2, plaintiff or his doctor would be able to present testimony at trial to authenticate them. *See* Fed. R. Evid. 901(b)(1). Further, the pre-operation letter is arguably self-authenticating as it bears the logo of Roosevelt Surgical Associates, Inc. (Doc. 28-1, Exh. 2); *see* Fed. R. Evid. 902(7) (providing that a document is self-authenticating if it bears "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control"). As to the paperwork concerning defendant's attendance policies and plaintiff's requests for leave in exhibits 3 through 6, plaintiff would also be able to present testimony to authenticate them. *See* Fed. R. Evid. 901(b)(1). Additionally, the

Court may consider exhibits 3 through 8 because Forman authenticated them at her deposition. (*See* Deposition of Elizabeth Forman, Doc. 27 at 19-22, 25-27, 34-37, 40-41, 45-46; Doc. 27-1 at 1-4, 7-9, 12, 16, 18); *see Meals*, 493 F.3d at 728-29; *Knight*, 102 F. Supp.2d at 871. Moreover, defendant produced exhibits 7 and 8 in response to plaintiff's discovery requests. (*See* Doc. 27 at 19-22, 25); *see Churches of Christ in Christian Union*, No. C2-07-CV-1186, 2009 WL 2146095, at *5. Accordingly, the Court finds that defendant's authentication argument is without merit as to all of plaintiff's exhibits.

Defendant also argues that the Court should not consider plaintiff's exhibits because they constitute inadmissible hearsay. The Court finds that this argument is also not well-taken. As to exhibits 3 through 6, they are admissible as defendant's business records. *See* Fed. R. Evid. 803(6). Exhibits 7 and 8 are admissible because they are summaries of defendant's business records. *See* Fed. R. Evid. 803(6) and 1006. Finally, exhibits 1 and 2 are admissible as business records. *See* Fed. R. Evid. 803(6); *Norton v. Colyer*, 828 F.2d 384, 386-87 (6th Cir. 1987) (holding that medical records may qualify for the business record exception to the rule against hearsay). Accordingly, the Court will consider plaintiff's exhibits on summary judgment.

## III. Motion for Summary Judgment (Doc. 22)

### A. Facts

#### 1. Parties and Background

Plaintiff was born on July 9, 1945 and was 68 at the time of his termination. (Coldiron Affidavit, Doc. 28-2 at ¶ 2). Defendant hired plaintiff as a driver in 2006. (*Id.* at ¶ 5). At the time of his discharge, plaintiff was defendant's oldest employee. (*Id.* at ¶ 7; Doc. 27 at 19-21).

Defendant is a limited liability company comprised of two members, Forman and Closky. (Coldiron Affidavit, Doc. 28-2 at ¶ 4; Doc. 22-1, Exh. A at ¶ 1). Defendant prepares and distributes food for homebound seniors, a service sometimes known as "Meals on Wheels."

(Coldiron Affidavit, Doc. 28-2 at ¶ 3). Concerning the role that Forman and Closky play in the company, Forman asserts the following:

> [We] have complete control over the company. We cannot be hired or fired. We are not supervised by anyone. We do not report to anyone. We have complete control over the business as owners. We have no written contract of employment with Clossman Catering, LLC. We do not receive a weekly paycheck from Clossman Catering, LLC. We share in the profits and losses of Clossman Catering, LLC.

(Doc. 38-1, Exh. A at ¶ 2).

Forman asserts that defendant did not employ 50 or more employees for any week during 2012 and 2013. (Doc. 22-1, Exh. A at ¶ 4). In support, defendant has provided a summary of the number of checks issued during each week in 2012 and 2013. (Doc. 22-1, Exh. 1). Forman avers that the summary of the check registry is based on voluminous records produced by ThinkPay, the company that provides defendant's payroll services. (Doc. 22-1, Exh. A at ¶ 5; Doc. 38-1, Exh. A at ¶ 3). If non-payroll checks were issued in a given week, Forman has noted on the check registry summary the number of payroll checks issued. (Doc. 22-1, Exh. A at ¶ 5; Doc. 22-1, Exh. 1; Doc. 38-1, Exh. A at ¶ 3). This summary indicates that defendant never issued more than 49 payroll checks during any week in 2012 and 2013. (*See* Doc. 22-1, Exh. 1).

Plaintiff asserts that the list of "Clossman Catering Employees [for the] 20 Weeks Prior to 8/25/2013" ("20-Week List") and the "Clossman Catering Employee Roster 8/25/2011 to 8/25/2013" ("Employee Roster") present an issue of fact as to the number of defendant's employees and call into question the accuracy of the summary of the check registry that defendant has provided. (Doc. 28 at 7). The 20-Week List indicates that defendant employed 74 different people for either all or part of the 20 weeks prior to August 25, 2013. (*See* Doc. 28-1, Exh. 7). The list provides the start and end dates for employees who are no longer employed. (*See id.*). For the remaining employees, the list states "currently still employed." (*See id.*). The

Employee Roster shows that defendant employed 163 different employees between August 25, 2011 and August 25, 2013. (*See* Doc. 28-1, Exh. 8). For each of these employees, the roster indicates the date of birth and the way the employee's employment ended if the employee was no longer employed. (*See id.*). The roster does not indicate the dates on which any employee's employment started or ended. (*See id.*).

2. Defendant's Attendance Policy

During his employment, plaintiff received and initialed a copy of defendant's policy for unpaid time off. (Doc. 22-2 at 16-17; Unpaid Time Off Policy, Doc. 22-2, Exh. 1). That policy states:

> Any employee who wishes to take unpaid time off from Clossman Catering must first obtain approval from Clossman Catering. Clossman Catering must be notified at least six (6) weeks in advance of the first day requested off. The employee requesting unpaid time off must both obtain approval for the time off and fill out the appropriate paperwork outlining the start date, date of return, and reason for the request.
>
> Any employee who does not request and obtain approval for unpaid time off at least six (6) weeks in advance of their time off will be subject to the absence and tardiness policies. In particular, the point policy for absences and tardiness will be applied for all non-approved time off and time off not requested at least six (6) weeks in advance.

(Doc. 22-2, Exh. 1). On July 22, 2010, plaintiff received and signed a notice of defendant's new attendance policy. (Doc. 22-2 at 18-20; Notice of Clossman Catering Attendance Policy, Doc. 22-2, Exh. 4). That policy states:

> Effective 7/22/10, there will be a new attendance policy for Clossman Catering. It will be based on a rolling six month period. During any six month period, a late arrival or early departure will count as a 0.5 point. If you work less than half of your scheduled shift, you will receive 1 point. If you call off 2 hours or more prior to the start of your shift, you will receive 1 point. A call off less than 2 hours will be 2 points. A no call/no show will result in an automatic termination. These rules apply to regular scheduled work days and unscheduled work days (off days).

An employee that accumulates 6 points within any given 6 month period will result in termination.

(Doc. 22-2, Exh. 4).

### 3. Plaintiff's Medical Condition and Termination

On July 18, 2013, plaintiff experienced pain in his groin while loading his truck in preparation for the day's deliveries. (Coldiron Affidavit, Doc. 28-2 at ¶ 38). An ambulance transported plaintiff to the hospital, where he received a preliminary diagnosis of "small bilateral inguinal hernias." (*Id.* at ¶¶ 38-39; ED Provider Note Electronically Signed by Dr. Oliver H. Loyd on July 18, 2013, Doc. 22-2, Exh. 6). Plaintiff was off work for the next two days. (Doc. 22-2 at 25-26). On July 22, 2013, plaintiff saw his primary care physician, Dr. Matthew Vernon, who confirmed the hernia diagnosis and referred him to a surgeon, Dr. David Kabithe. (Coldiron Affidavit, Doc. 28-2 at ¶ 43). On July 24, 2013, plaintiff saw Dr. Kabithe, who confirmed the diagnosis and provided plaintiff with educational material about hernia surgery. (Doc. 28-1, Exh. 1). Dr. Kabithe's records do not indicate that the surgery was an emergency surgery. (Doc. 22-2 at 32).

Plaintiff returned to work for some days between July 23 and August 1, 2013. (Coldiron Affidavit, Doc. 28-2 at ¶ 51). Plaintiff testified that he was not able to return to his full job duties during that time because he "was under a doctor's stipulation [not to] lift anything more than 6 pounds [and to] try to limit stretching, bending and [the] like so as it wouldn't hurt it any worse than what it was." (Doc. 22-2 at 26). Plaintiff testified that he gave the records of those doctor's orders to defendant. (*Id.* at 26-27). However, plaintiff affirmed that he was able to perform his duties and run his route because most of his duties did not involve lifting more than six pounds. (*Id.* at 27). Plaintiff also denied that he had any issues performing his route that he communicated to defendant after returning to work. (*Id.* at 27-28). However, plaintiff testified

23

that if he thought packages weighed more than six pounds or they were sitting on the top shelf, he would ask other workers to assist him in retrieving them. (*Id.* at 56).

On July 31, 2013, plaintiff had a second appointment with Dr. Kabithe, who scheduled plaintiff's hernia surgery for August 6, 2013. (Coldiron Affidavit, Doc. 28-2 at ¶ 46). Plaintiff testified that it was his decision to have surgery on that date, and that Dr. Kabithe did not tell him that he "had to have it on that date." (Doc. 22-2 at 32). Plaintiff testified that "[i]t was either that or die." (*Id.*). Plaintiff further testified that August 6 was "the earliest or the latest date that [he] could get in" for surgery. (*Id.* at 33-34). Plaintiff's deposition also contained the following testimony concerning the August 6 date for surgery:

> Q. And when [defendant] asked you to comply with this attendance policy to help them get your route covered in advance so they would have advance notice, you refused to do that though?
> A. I was asked to have my surgery, you, know, my doctor said I can schedule it for such a day. And I said if that's the earliest or the latest, I will take that day. That's the only notice that I could give.
> If he said you can't have surgery until December, I would have told them December. He told me the 5th [sic]. That was the earliest or latest possible for that particular doctor.
> Now I didn't see any other doctors, no.
> Q. So you're saying there was no other date in existence that doctor could ever have done—
> A. To my knowledge no.

(*Id.* at 54).

Dr. Kabithe gave plaintiff a "disability certificate" that certified that plaintiff would be totally incapacitated from August 6 to September 9, 2013. (Disability Certificate, Doc. 28-1, Exh. 2). Dr. Kabithe's office also provided a letter that indicated plaintiff was scheduled to have surgery for a bilateral inguinal hernia on August 6, 2013. (Pre-Operation Letter, Doc. 28-1, Exh. 2). On August 1, 2013, plaintiff provided copies of the disability certificate and pre-operation letter to Lorthioir. (Doc. 22-2 at 34; Coldiron Affidavit, Doc. 28-2 at ¶ 48). Lorthioir told plaintiff to have Dr. Kabithe sign paperwork indicating whether the surgery was elective or

non-elective. (Doc. 22-2 at 34). Plaintiff testified that Dr. Kabithe's office "refused to sign that saying that they can't sign if any surgery is elective or non-elective." (*Id.*). Plaintiff testified that because he could not get Dr. Kabithe's office to sign the paper indicating that the surgery was non-elective, "as far as [plaintiff] knew, [he] was out of compliance [with the attendance policy] and [he] really at that particular time didn't care because [he] was hurting and [he] was going to get it taken care of." (*Id.* at 36). Lorthioir also told plaintiff that he was going to accumulate points under the attendance policy while he was out for his recovery from surgery. (*Id.*).

Forman testified that she directed Lorthioir "to call and ask the physician if he would sign off on paperwork saying it was elective." (Doc. 27 at 57). Forman did not speak with the physician, and she did not know if Lorthioir did. (*Id.*). An August 5, 2013 incident report signed by Lorthioir indicates:

> I called [plaintiff's] surgeon Dr. David Kabithe's office to ask if the doctor would be able to classify Mr. Coldiron's surgery as "non-elective." His nurse Sharon said she would ask the doctor if this was possible. She later called me back and said the doctor said this surgery was not an emergency and he could not classify it as "non-elective."

(Incident Report, Doc. 27-1, Exh. 20). Plaintiff attests that he never authorized the release of any medical information from Dr. Kabithe to defendant prior to litigation. (Coldiron Affidavit, Doc. 28-2, ¶ 55).

On August 6, 2013, plaintiff underwent hernia surgery. (*Id.* at ¶ 56). Plaintiff attests that in late August 2013, he visited defendant "to confirm [his] return date at which time [he] was advised that [he] had been discharged by [defendant]." (*Id.* at ¶ 57). Forman attests that plaintiff was terminated for breaching defendant's attendance policy, which required plaintiff to give six weeks' notice before taking a leave of absence for an elective surgery. (Doc. 22-1, Exh. A at ¶¶ 3(g)-3(i)). Forman avers that after plaintiff's termination, his driving route was immediately

taken over by J.P., an existing employee who was born in 1951. (*Id.* at ¶ 3(j)). James Pope attests that he took over plaintiff's route in August 2013. (Doc. 38-3, Exh. C at ¶ 3).[9]

## B. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

---

[9] Plaintiff testified that after his termination some of the clients on his former route called him and told him that the driver who replaced him was younger than him. (Doc. 22-2 at 42-45). However, the statements of plaintiff's former clients are hearsay, and the Court may not consider them when deciding defendant's motion for summary judgment. *See, e.g., Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded."). In any event, the parties do not dispute that Pope is six years younger than plaintiff, but as the undersigned will explain below in analyzing plaintiff's age discrimination claims, that age difference is not legally significant.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the non-moving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original). To meet that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### C. Resolution

#### 1. FMLA

Defendant argues that summary judgment should be granted on plaintiff's FMLA claim because defendant is not a covered employer for FMLA purposes as it did not employ 50 or more employees for any calendar weeks in 2012 or 2013. (Doc. 22 at 7-9). Further, defendant contends that even if the FMLA did apply to plaintiff's claim, he was not eligible for FMLA leave because he did not have a serious health condition that rendered him unable to perform his job. (*Id.* at 9-11). Moreover, defendant argues that plaintiff did not comply with the FMLA's requirement that an employee give his employer notice of his leave request at least 30 days before the leave is to begin unless "the date of treatment requires leave to begin in less than 30 days." (*Id.* at 11).

Plaintiff responds that summary judgment is not appropriate because defendant is a covered employer for FMLA purposes. (Doc. 28 at 10-11). Plaintiff contends that defendant's

summary of the check registry does not clarify the number of employees during the relevant time period because it does not reveal the names of those employees. (*Id.* at 10). Further, plaintiff argues that the 20-Week List and the Employee Roster do not clarify the number of employees. (*Id.*). Plaintiff asserts that Department of Labor regulations provide that any employee on the payroll will be considered employed each working day of the calendar week regardless of whether any compensation is received for that week. (*Id.* at 11). Thus, plaintiff argues that because defendant has a policy permitting employees to take unpaid time off, "a person who was away for a week would not be on Thinkpay's list of checks issued but would still be an employee." Plaintiff further contends that Forman and Closky should be counted as employees for FMLA purposes because they "materially participate[d] in the activities of the company." (*Id.*). As to the FMLA's notice requirements, plaintiff argues that the disability certificate from Dr. Kabithe provided practicable notice under the circumstances and "made it clear that [plaintiff] required surgery and would likely return on a specific date." (*Id.* at 11-12). Plaintiff asserts that once he put defendant on notice of his FMLA qualifying leave, the burden shifted to defendant to obtain any additional information it felt was appropriate; however, defendant has presented no admissible evidence that it contacted Dr. Kabithe regarding the necessity of the surgery. (*Id.* at 12). Plaintiff further asserts that the FMLA prohibits an employer from denying FMLA leave based on an employee's failure to comply with the employer's internal procedural requirements that are stricter than the requirements of the FMLA. (*Id.* at 12-13). Finally, plaintiff asserts that his termination was in direct retaliation for his exercise of his FMLA rights that immediately followed his efforts to take medical leave. (*Id.* at 13).

In reply, defendant argues that Forman's affidavit testimony and the summary of the check registry establish that defendant did not have 50 or more employees during any week in 2012 or 2013. (Doc. 38 at 2-4). Defendant contends that plaintiff has failed to submit any

contradictory evidence regarding defendant's number of employees but has only made conclusory statements that the testimony and records "do not clarify" the number of employees. (*Id.* at 4-5). Defendant argues that Closky and Forman are not "employees" of the company because they are owners who operate independently and manage the business rather than being subject to the business's control. (*Id.* at 6-8). For the first time in its reply brief, defendant contends that plaintiff is not an "eligible employee" under the FMLA because defendant did not employ 50 or more people within 75 miles of plaintiff's worksite when plaintiff gave notice of his surgery and leave request. (*Id.* at 8-10). Finally, defendant argues that plaintiff was required to give 30-day notice of his need for FMLA leave because he was able to perform his job duties and his surgery was non-emergency. (*Id.* at 10-11).

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" under the FMLA must have been employed "(i) for at least 12 months by the employer with respect to whom leave is requested . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). An "employer" under the FMLA "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). Under the regulations promulgated by the Department of Labor, courts apply the "payroll method" in assessing whether an entity "employs 50 or more employees for each working day during each of 20 or more calendar workweeks." *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206 (1997) ("This test is generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's

appearance on the employer's payroll."). "A private employer is covered if it maintained 50 or more employees on the payroll during 20 or more calendar weeks (not necessarily consecutive workweeks) in either the current or the preceding calendar year." 29 C.F.R. § 825.105(e).

Here, the undersigned finds that summary judgment should be granted in favor of defendant on plaintiff's FMLA claim. Defendant has produced evidence that it did not employ 50 or more employees for any week in the 2 years preceding plaintiff's request for medical leave and termination. (*See* Doc. 22-1, Exh. A at ¶¶ 4-5 & Exh. 1); *see* 29 U.S.C. § 2611(4)(A)(i). In response, plaintiff has failed to produce evidence showing that there is a "genuine issue for trial" concerning defendant's employment figures. *See Matsushita*, 475 U.S. at 587; *Celotex*, 477 U.S. at 325 ("[T]he burden is [not] on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). *See also Dobrowiak v. Convenient Family Dentistry, Inc.*, No. 04-73495, 2008 WL 450474, at *4 (E.D. Mich. Feb. 15, 2008) (finding that once "[d]efendant met its initial summary judgment burden by asserting that the record was insufficient as a matter of law" to establish the 50-employee threshold, plaintiff "was obligated to produce evidence which, viewed most favorably to her, could sustain the conclusion that the 50-employee threshold was met."), *aff'd*, 315 F. App'x 580 (6th Cir. 2009); *Missak v. Lakeland Eng'g Equip. Co*, No. 8:04-cv-567, 2005 WL 2764825, at *3 (D. Neb. Oct. 25, 2005) (dismissing FMLA claim where "plaintiff offer[ed] no evidence or support of any kind" for the allegation that defendant had 50 or more employees, and defendants "offered tax returns and wage statements . . . [indicating there were] less than 50 employees"). Plaintiff makes two arguments to challenge defendant's evidence, but both are unavailing.

First, plaintiff asserts that the summary of the check registry does not clarify the number of employees because it may not include employees who took unpaid leave and did not receive paychecks during a given week. Plaintiff also argues that the 20-Week List and the Employee Roster do not clarify the number of employees. However, plaintiff has not provided "specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (emphasis in original). At best, he has simply attempted to "show that there is some metaphysical doubt as to the material facts," but this is not sufficient to survive summary judgment. *See id.* at 586; *Tilley v. Kalamazoo Cty. Rd. Comm'n*, 777 F.3d 303, 311 (6th Cir. 2015) (holding that the record did not support plaintiff's position that defendant employed 50 or more employees when defendant presented evidence that it employed less than 50 people, and plaintiff "ha[d] not presented any evidence to the contrary"); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (holding that the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment").

Specifically, plaintiff has not provided the Court with any evidence to show that during the relevant time period there were employees who took unpaid leave and were not included in the employee numbers that defendant has produced. Moreover, plaintiff cannot rely on the Employee Roster to establish that defendant employed 50 or more employees during 20 separate weeks within the relevant time period because that document provides only the names of all of defendant's employees during the 2-year period, but does not provide any information about which of those employees were employed during which specific weeks. (*See* Doc. 28-1, Exh. 8). As to the 20-Week List, plaintiff has not argued that this document shows that defendant employed at least 50 employees during 20 separate weeks in the relevant time period. Instead, plaintiff asserts only that the document "do[es] not clarify" the number of employees. (*See* Doc. 28 at 10). After reviewing the 20-Week List, the undersigned concludes that on its face, the

document does not satisfy plaintiff's burden of producing evidence from which a reasonable jury could find that defendant employed 50 or more employees during at least 20 weeks in the relevant 2-year period. Thus, plaintiff has not met his burden of demonstrating a prima facie case for relief under the FMLA by showing that defendant qualifies as an "employer." *See Street*, 886 F.2d at 1478; *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427-28 (6th Cir. 2014) (holding that an employee had failed to refute his former employer's evidence that it employed fewer than 50 individuals during the relevant time period by failing to offer any evidence of additional employees).

As to plaintiff's second argument, the undersigned finds that Forman and Closky are not employees. The FMLA does not provide a definition for an "employee" generally. *See* 29 U.S.C. § 2611. The Supreme Court has held that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992). The Supreme Court has identified six factors as relevant to the determination of whether a shareholder-director of a company is an employee of that company:

> [1.] Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work[;]
> [2.]   Whether and, if so, to what extent the organization supervises the individual's work[;]
> [3.] Whether the individual reports to someone higher in the organization[;]
> [4.]   Whether and, if so, to what extent the individual is able to influence the organization[;]
> [5.]   Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts[;]
> [6.]   Whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449 (2003). In *Clackamas*, the Supreme Court also instructed that "the common-law element of control is the principal

guidepost that should be followed" and that an examination must be conducted to determine "whether shareholder-directors operate independently and manage the business or instead are subject to the firm's control." *Id.* at 448.

Forman avers that she and Closky have complete control over the company as owners, cannot be fired, are not supervised by anyone, do not report to anyone, have no written contract of employment, do not receive a weekly paycheck, and share in the company's profits and losses. (Doc. 38-1, Exh. A at ¶ 2). Plaintiff has not presented any evidence to call Forman's affidavit testimony into question. Thus, under every factor the Supreme Court has identified as relevant, Forman and Closky are not employees of defendant. *See Clackamas*, 538 U.S. at 449.

Based on the foregoing, the undersigned finds that plaintiff has not shown that there is a genuine issue of material fact concerning defendant's number of employees. Accordingly, defendant's motion for summary judgment should be granted on plaintiff's FMLA claim because defendant is not a covered employer under the FMLA.[10]

## 2. Age Discrimination Claims

Defendant argues that summary judgment should be granted on plaintiff's age discrimination claims because he cannot establish a prima facie case of age discrimination. Defendant argues that plaintiff has not shown he was replaced by a substantially younger employee or treated differently than any other similarly situated, non-protected employee. (Doc. 22 at 12-13). Defendant asserts that plaintiff was replaced by Pope who was six years younger than plaintiff, which was not a significant age difference. (*Id.* at 13; Doc. 38-3, Exh. C at ¶ 3). Further, defendant argues that even if plaintiff has shown a prima facie case, defendant's reason for terminating plaintiff—its honest belief that he had violated the attendance policy—was

---

[10] Because the conclusion that defendant does not qualify as an "employer" under the FMLA is fatal to plaintiff's claim, the Court need not reach the other arguments defendant has raised as grounds for granting summary judgment in its favor on plaintiff's FMLA claim.

legitimate and nondiscriminatory. (Doc. 22 at 13-15). Defendant contends that plaintiff has not provided any evidence that defendant's reason for terminating him was pretextual. (*Id.* at 16).

Plaintiff responds that defendant's rationale for his termination "is so unreasonable that one could rationally conclude that [defendant] had an animus towards [plaintiff] due to his age," which supports an inference of discrimination for purposes of establishing his prima facie case. (Doc. 28 at 17-18). Plaintiff asserts that Pope was likely a "fill in" until plaintiff was replaced. (*Id.* at 18). Plaintiff argues that defendant did not honestly hold a belief that he had violated the attendance policy because defendant "failed to make a reasonably informed and considered decision before taking its adverse employment action." (*Id.* at 19). Plaintiff asserts that defendant's firing "a 68 year old, who had worked for the company for six years because he did not seek six weeks' notice for hernia surgery is not worthy of belief and was not honestly held." (*Id.* at 20).

In reply, defendant argues that plaintiff cannot assert a mixed-motives discrimination claim under the ADEA, but that age must be the "but-for" cause of the adverse employment action. (Doc. 38 at 11-12). Defendant contends that plaintiff cannot show that age was the but-for cause of his termination because plaintiff "claims that he was terminated for taking off work to have hernia surgery." (*Id.* at 12). Defendant asserts that plaintiff has not presented any evidence of pretext but has "resort[ed] to conclusory allegations . . . that [defendant's] proffered reason is not worthy of belief." (*Id.* at 13).

The ADEA, 29 U.S.C. § 623(a)(1), and Ohio Rev. Code § 4112.14(A) prohibit an employer from discharging any individual because of his age. The same evidentiary framework applies to claims under the federal and Ohio statutes. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002). A plaintiff may establish an age discrimination claim by either direct or circumstantial evidence. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410

(6th Cir. 2008). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* Whether a plaintiff seeks to prove his age discrimination case by direct or circumstantial evidence, he has the burden to prove by a preponderance of the evidence "that age was the 'but-for' cause of [his] employer's adverse action." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

If the plaintiff presents credible, direct evidence of discrimination, then he need not go through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 414 U.S. 811 (1973). *See Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248-49 (6th Cir. 1995). A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of age discrimination through circumstantial evidence by showing that: (1) he is a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) there were circumstances that support an inference of discrimination. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). A plaintiff may satisfy the fourth prong of a prima facie case by showing that he was replaced by a substantially younger individual, which may include an individual within the protected class. *Martin*, 548 F.3d at 410; *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *see also Geiger*, 579 F.3d at 622. A plaintiff "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Grosjean v. First Energy*

*Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). "[A]n age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340.

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

At the pretext stage, the plaintiff has the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [him]." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). He can accomplish this by proving "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his [discharge], or (3) that they were *insufficient* to motivate discharge.'" *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

If a plaintiff produces evidence at the pretext stage that his employer's proffered reason for his discharge was false, an employer may rely on the "honest belief" rule to show that its proffered reason is not pretextual. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-17 (6th Cir. 2001). As initially developed in the Seventh Circuit, the honest belief rule "provides that so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reasons is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) (citations omitted). The Sixth Circuit has adopted a "modified honest

belief" rule, which provides that "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard*, 698 F.3d at 286 (citing *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)). In justifying its modification of the Seventh Circuit's rule, the Sixth Circuit rejected the Seventh Circuit's application of the rule to the extent it "credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and mythology." *Smith*, 155 F.3d at 806. As to the justification for the rule, the Sixth Circuit explained: "The rationale behind the rule is that the focus of a discrimination suit is on the intent of the employer. If the employer honestly, albeit mistakenly believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer arguably lacks the necessary discriminatory intent." *Id.*

If an employer relies on the honest belief rule, the employee "must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Blizzard*, 698 F.3d at 286 (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012)).

> To overcome the employer's invocation of the honest belief rule, the employee "must allege more than a dispute over the facts upon which [the] discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."

*Id.* (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). "[I]t is not necessary 'that the decisional process used by the employer be optimal or that it left no stone unturned.'" *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). An employer "is entitled to the protections of the honest belief rule [if] it has shown that it made a 'reasonably informed

and considered decision' to terminate [a plaintiff's] employment." *Id.* (citing *Smith*, 155 F.3d at 807).

Here, the undersigned finds that summary judgment should be granted in favor of defendant on plaintiff's federal and state claims of age discrimination. First, plaintiff has failed to establish a prima facie case of age discrimination by failing to identify "circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283. Defendant has produced evidence that plaintiff was replaced after his termination by Pope, who is six years younger than plaintiff. (Doc. 22-1, Exh. A at ¶ 3(j); Doc. 38-3, Exh. C at ¶ 3). This age difference of six years is not significant enough to support an inference of discrimination under the ADEA. *See Grosjean*, 349 F.3d at 340. While plaintiff asserts that Pope was likely a "fill in" until plaintiff was replaced (*see* Doc. 28 at 18), he has not provided the Court with any evidence to substantiate this assertion. Moreover, plaintiff has not identified any evidence of other circumstances that would support an inference of discrimination. Thus, he has failed to satisfy his burden of establishing a prima facie case. *See McDonnell Douglas*, 411 U.S. at 802 ("The complainant . . . must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination."); *see also Geiger*, 579 F.3d at 620.

Moreover, even if the Court were to find that plaintiff has established a prima facie case of age discrimination, defendant has proffered a legitimate, nondiscriminatory reason for plaintiff's termination: his violation of the attendance policy in failing to give six weeks' notice before missing weeks of work for an elective surgery. (*See* Doc. 22-1, Exh. A at ¶¶ 3(g)-3(i)); *McDonnell Douglas*, 411 U.S. at 802. Plaintiff contends that defendant's reason for the termination was pretextual and asserts that defendant "failed to make a reasonably informed and considered decision before taking its adverse employment action." (Doc. 28 at 19-20). The undersigned finds that regardless of whether plaintiff's surgery was actually elective—a fact that

remains in dispute between the parties—plaintiff has failed to overcome the honest belief rule in making his argument of pretext. Specifically, the undersigned finds that defendant may rely on the incident report describing Lorthioir's communications with Dr. Kabithe's office to show that Forman honestly believed that plaintiff's surgery was elective in deciding to terminate him. (Incident Report, Doc. 27-1, Exh. 20; Doc. 22-1, Exh. A at ¶¶ 3(g)-3(i)); *Blizzard*, 698 F.3d at 286. Plaintiff has not put forth any *evidence* that creates an issue of fact as to whether defendant failed to make a reasonably informed and considered decision in finding that plaintiff failed to comply with defendant's attendance policy such that termination was warranted. Nor has plaintiff presented any evidence that demonstrates defendant did not "honestly believe" that his surgery was elective such that he was in violation of the attendance policy. *See Blizzard*, 698 F.3d at 286. Thus, plaintiff also has failed to satisfy his burden at the pretext stage of producing "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [him]." *Chen*, 580 F.3d at 400.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's age discrimination claims.

### 3. Disability Discrimination Claims

Defendant argues that summary judgment should be granted on plaintiff's disability discrimination claims because plaintiff's hernia did not satisfy the definition of a "disability." (Doc. 22 at 16-17). Specifically, defendant contends that because the recovery period for plaintiff's hernia surgery was only a few weeks it was not covered under the ADA as a sufficiently severe long-term impairment that substantially limits a major life activity. (*Id.* at 17-19). Defendant also argues that there were no records in evidence that plaintiff suffered from a substantially limiting impairment. (*Id.* at 19-20). Further, defendant contends that plaintiff's condition was too "transitory and minor" for defendant to have "regarded" him as having a

disability for purposes of the ADA. (*Id.* at 20-21). Defendant argues that even if plaintiff can establish a prima facie case of disability discrimination, defendant terminated plaintiff for a legitimate, nondiscriminatory reason, and plaintiff has not provided any evidence that the reason for his termination was pretextual. (*Id.* at 21).

Plaintiff responds that under a line of cases interpreting the ADAAA's expansion of the meaning of the term "disability," the temporary impairment in the major life activities of walking, lifting, bending, performing manual tasks, and working caused by his hernia and surgery constituted a "disability." (Doc. 28 at 13-15). Plaintiff contends that defendant failed to accommodate his disability by not allowing him a reasonable time off to undergo surgery and recover from it. (*Id.* at 15-16). Plaintiff argues that he has established a prima facie case of disability discrimination because defendant terminated him immediately after he requested leave for hernia surgery. (*Id.* at 16-17).

In reply, defendant argues that plaintiff was not substantially limited in major life activities by "an alleged small hernia which did not prevent Plaintiff in this case from performing the functions of his job." (Doc. 38 at 14-15). Defendant contends that plaintiff has misrepresented his testimony and the caselaw and has not presented any evidence that the legitimate, nondiscriminatory reason for his termination was pretextual. (*Id.* at 15-17).

The ADA, 42 U.S.C. § 12101 *et seq.*, and Ohio Rev. Code § 4112.02(A) prohibit an employer from discharging any individual on the basis of disability. Because the alleged discriminatory acts in this case occurred after January 1, 2009, the ADAAA applies. *Milholland v. Sumner Cty. Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009). In order to establish a claim for disability discrimination, a plaintiff must first establish that he is "disabled" within the meaning of the Act. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

Under the ADAAA, "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12101(2)(A). An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

In the absence of direct evidence of discrimination on the basis of disability, a plaintiff may prove discrimination using the burden-shifting analysis set forth in *McDonnell Douglas*. *Smith*, 155 F.3d at 805. If the plaintiff states a prima facie case of disability discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action. *Id.* Once the defendant proffers such a reason, the burden shifts back to the plaintiff to show that it is a pretext for discrimination. *Id.*

To make a prima facie case of disability discrimination, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation; (3) he suffered an adverse employment action because of his disability; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).

Here, for the reasons noted above in the analysis of defendant's motion to strike, plaintiff has provided the Court with admissible evidence that as a result of his hernia he was restricted in his ability to lift and bend. Thus, the undersigned finds that whether plaintiff suffered from a disability is a disputed issue of fact. However, as noted above in the discussion of plaintiff's age

discrimination claims, plaintiff has failed to provide any evidence of pretext by showing that defendant did not "honestly believe" that his surgery was elective. Thus, even if the Court were to assume that plaintiff was disabled under the Act, he also cannot satisfy his burden at the pretext stage for his disability claims, and summary judgment is appropriate.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's disability discrimination claims.

## IV. Conclusion

Based on the foregoing,

(1) plaintiff's motions to strike (Docs. 25 & 37) are **GRANTED** to the extent that defendant offers the incident report, paragraph 3(f) of Forman's affidavit, and paragraph 6 of her supplemental affidavit as evidence that plaintiff's surgery was elective, but are **DENIED** to the extent that defendant offers the incident report to show its effect on Forman in her decision to terminate plaintiff;

(2) plaintiff's motions to strike are **GRANTED** as to the phrase "the potential exception of one employee that took unpaid leave from 6/18/13 to 6/30/13" in paragraph 6 of Forman's affidavit;

(3) plaintiff's motions to strike are **DENIED** in all other respects;

(4) defendant's motion to strike (Doc. 33) is **GRANTED** as to paragraph 44 and the phrase "and was never disciplined prior to my discharge" in paragraph 6 of Coldiron's affidavit; and

(5) defendant's motion to strike is **DENIED** in all other respects.

Further, the undersigned **RECOMMENDS** that defendant's motion for summary judgment (Doc. 22) be **GRANTED**.

Date: _10/27/15_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT COLDIRON,
Plaintiff,

vs.

CLOSSMAN CATERING, LLC,
Defendant.

Case No: 1:14-cv-300

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).